UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONNA SHANDREW,

                    Plaintiff,

      v.                                                    **DECISION AND ORDER**
                                                              08-CV-00760S
QUEST DIAGNOSTICS INCORPORATED,

                    Defendant.

## I.  INTRODUCTION

Plaintiff Donna Shandrew ("Plaintiff") commenced this employment discrimination action by filing a Complaint in the United States District Court for the Western District of New York.  (Docket No. 1.)  Therein, Plaintiff alleges Defendant Quest Diagnostics Incorporated ("Quest") discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA") and disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112 et seq. ("ADA").

Presently before this Court is Defendant's Motion for Summary Judgment seeking dismissal of the Complaint in its entirety.[1]  (Docket No. 18.)  Plaintiff opposes the motion.[2] For the reasons stated below, Defendant's motion is granted in part and denied in part.

---

[1] In support of its Motion, Defendant filed a Rule 56.1 Statement of Undisputed Facts, with Exhibits; Declarations of Cherilyn Schumacher, Kelli Hunt, Craig R. Stauffer, and Amy L. Hemenway, Esq; Memorandum in Support; Reply Declaration of Amy L. Hemingway, Esq.; and Reply Memorandum of Law.

[2] In opposition, Plaintiff filed a Rule 56.1 Statement of Disputed Facts; Affidavit of Donna Shandrew; Affidavit of Harvey P. Sanders, Esq., with Exhibits; and Memorandum of Law .

## II. BACKGROUND

**A.     Facts**

Quest is a provider of diagnostic testing, information and services.  (Def.'s Stmt. ¶ 1.)[3]  Quest offers these services through offsite facilities known as patient service centers ("PSC").  (Id. ¶ 2.)

Plaintiff commenced employment with Quest on November 18, 1991 as a phlebotomist and remained in that position until her termination on or about May 28, 2004.  (Id. ¶ 3.)  During the relevant time period, Plaintiff worked at the PSC located at 1150 Youngs Road, Williamsville, New York.  (Stauffer Aff. ¶ 7.)  At the time of her termination, Plaintiff was 58 years of age.  (Def.'s Stmt. ¶ 5.)

During the relevant time period, Plaintiff reported directly to Martha Stutzman ("Stutzman"), a Phlebotomy Supervisor.  (Id. ¶ 41.)  Stutzman reported directly to Cheri Schumacher ("Schumacher"), a Field Operations Manager.  (Schumacher Dec. ¶¶ 2, 19.)

<u>Plaintiff's Medical Leave and Return to Work</u>

From on or about May 17, 2003 to November 3, 2003, Plaintiff was on medical leave due to surgery related to her cancer.  (Def.'s Stmt. ¶ 42; Tr. 104:9-10.)  Plaintiff's physician instructed that when she returned to work, she was not to lift over 25 pounds for a two-week period.  (Def.'s Stmt. ¶ 43.)  After she returned from her leave of absence, Plaintiff continued to undergo cancer treatment during off-work hours.  (Id. ¶ 45.)  Plaintiff completed chemotherapy treatment on March 18, 2004.  (Id.)

---

[3]Referring to Defendant's Rule 56 Statement of Undisputed Facts, which contains citations to the record evidence in this case.  This Court has confirmed and is satisfied that the evidence cited supports the assertions therein.  Cf. <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 74 (2d Cir., 2001) (holding that factual allegations contained in a Rule 56.1 Statement that find no support in the record evidence must be disregarded and the record reviewed independently).

Plaintiff alleges that after she returned to work, Stutzman commented that the cancer and/or chemotherapy treatment must have made her slow. (Id. ¶ 80.) On April 16, 2004, Plaintiff wrote a letter to Quest's Managing Director, Mark Kehoe ("Kehoe"), complaining about how Stutzman was treating her. (Def.'s Ex. T.)

Plaintiff's Allegedly Improper Behavior and Termination

On or about April 28, 2004, Plaintiff's co-workers Maurita Potoczak and Marilyn Doran informed Stutzman they suspected Plaintiff was removing personal health information ("PHI") from the PSC in violation of Quest's policy. (Def.'s Stmt. ¶ 47.) Stutzman reported the incident to Schumacher, who reported it to Quest's Compliance Department. (Id. ¶ 49.) The Compliance Department hired independent investigator Peter O'Donnell to determine whether Plaintiff removed PHI or other confidential information from the workplace, and whether any such information had been improperly used or disclosed. (Id. ¶¶ 50-52.)

On May 5, 2004, Quest disseminated a message to its employees via a broadcast message that PHI was not to leave the PSC. (Tr. 132:19-133:11)

O'Donnell commenced his investigation by interviewing five employees, including Plaintiff, on May 17, 2004. (Def.'s Stmt. ¶ 54.) At the conclusion of his interviews, O'Donnell determined Plaintiff violated Quest's policies governing the use, disclosure, and maintenance of PHI and confidential information when she admittedly removed PHI from the workplace. (Id. ¶ 58.) Plaintiff stated she had removed PHI to her car to work on record keeping during her break. (Def.'s Ex. W.) Upon inspection, no PHI was found in Plaintiff's car. (Id.) O'Donnell noted that "the PHI was not compromised and there was little risk of patient identity theft posed by [her] actions." (O'Donnell Aff. ¶¶ 17-18.)

3

Based on the result of the investigation, Craig Stauffer ("Stauffer"), Director of Human Resources, along with Kelli Hunt, Manager of Patient Services, Schumacher, and members of the Corporate Compliance Department decided to terminate Plaintiff on May 28, 2004.  (Def.'s Stmt. ¶¶ 60, 61.)  Stauffer works out of Pittsburgh, but oversees the Quest locations in Buffalo.  (Tr. 54:7-17.)

Another employee, Judith Ziegler ("Ziegler") was terminated as a result of the same investigation where PHI was found in the trunk of her car.  (Tr. 222:3-7; Def.'s Ex. W.)

**B.    Procedural History**

On or about July 9, 2004, Plaintiff dually-filed a charge with the New York State Division of Human Rights ("NYSDHR") and the EEOC alleging Quest discriminated against her because of her disability (cancer).  (Def.'s Ex. A.)  On December 21, 2005, the NYSDHR issued a Determination after Investigation, finding probable cause to believe Quest engaged in the unlawful discriminatory practice complained of, which it identifies as age and disability discrimination.  (Def.'s Ex. B.)

A hearing was held before Administrative Law Judge Martin J. Erazo ("ALJ Erazo") of the NYSDHR on July 11 and 12, 2007.  (Def.'s Stmt. ¶ 12.)  During the hearing, the parties stipulated to certain testimony and documentary evidence proffered during the hearing in a companion case, *Ziegler v. Quest Diagnostics Incorporated* (SDHR Case No. 10101632), which ALJ Erazo also presided over.  (Id.)  In her case, Ziegler alleged both disability and age discrimination.  (Id.)  ALJ Erazo allowed testimony and documentary evidence on the issue of whether Plaintiff's age was a factor in Quest's decision to terminate her, even though it was not raised as an issue for consideration by either party.

4

(Id. ¶ 13.)

At the conclusion of the hearing, ALJ Erazo issued a Decision and Order recommending a finding that Quest discriminated against Plaintiff on the basis of disability and age.  (Id. ¶ 15.)  Quest filed objections to the Order.  (Def.'s Ex. F.)  On December 24, 2007, NYSDHR Adjudication Counsel Matthew Menes issued an Alternative Proposed Order concluding the evidence did not support the allegations.  (Def.'s Ex. G.)  On January 30, 2008, NYSDHR Commissioner Kumiki Gibson adopted the Alternative Proposed Order and the complaint was dismissed.  (Id.)  The EEOC adopted the NYSDHR's findings and issued a Dismissal and Notice of Rights on July 16, 2008.  (Def.'s Ex. H.)

On October 14, 2008, Plaintiff commenced this action by filing a Complaint with the Clerk of this Court.  (Docket No. 1.)  Quest filed an answer thereto on December 4, 2008. (Docket No. 4.)  Quest filed the instant Motion for Summary Judgment on November 6, 2009.  (Docket No. 18.)

## III.  DISCUSSION AND ANALYSIS

### A.    Exhaustion of Administrative Remedies

Quest argues that Plaintiff may not raise her age discrimination claim in her federal case because it was not included in or reasonably related to the allegations contained in her EEOC charge.  (Def.'s Memo., p. 4.)

Under the ADEA, a claimant may bring suit in federal court only if he has filed a timely complaint with the EEOC or a "State or local agency with authority to grant or seek relief from such practice."  See 42 U.S.C. § 2000e-5(e),(f); 29 U.S.C. § 626(d).  To be timely, an EEOC complaint must "be filed . . . within 300 days of the alleged discriminatory act." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010); see also, 42

U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).

However, a plaintiff may proceed with an ADEA claim in federal court following an untimely filing with the EEOC where the claim is "reasonably related" to an EEOC charge that was filed. Anderson v. Derby Bd. of Educ., 718 F.Supp.2d 258, 271 n.30 (D.Conn. 2010). "A claim raised for the first time is reasonably related to the allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2nd Cir. 2001) (citations and internal quotations marks omitted).

Plaintiff asserts that Quest was on notice of the age discrimination claim long before the hearing. (Pl.'s Memo., p. 10.) For instance, she argues the claim was included in an Amended Complaint filed with the NYSDHR. (Id.) In addition, she states that her counsel submitted a letter concerning both age and disability discrimination claims. (Id.) And, the NYSDHR found probable cause to believe that Quest was engaging in or engaged in the unlawful discriminatory practice complained of. (Id.)

However, the Amended Complaint is unsigned and undated. Plaintiff asserts the ALJ mentioned in his Recommended Decision that an amended complaint was filed, but does not show same. Thus, it is unclear whether it was ever filed with the NYSDHR. In addition, Plaintiff's pre-hearing statement to the ALJ, written on October 27, 2006, states that the issue before the NYSHDR was: "Whether Respondent terminated Complainant due, in whole or part, to her *disability*." (Def.'s Ex. D) (Emphasis added.)

There may be a question of fact as to whether Plaintiff actually filed an Amended Charge with the EEOC alleging age discrimination; however, even if such a charge was

6

properly filed, and the case is properly before the Court, the claim still does not survive summary judgment for the reasons stated below.

**B.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y.

1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)).

Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere

incantation of intent or state of mind would operate as a talisman to defeat an otherwise

valid motion."   Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).   Indeed, the Second

Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted,

expensive and harassing trials – apply no less to discrimination cases than to commercial

or other areas of litigation."   Id.

**C.      Plaintiff's ADA and ADEA Claims**

      **1.      Burden-Shifting Framework**

Claims of employment discrimination under the ADA and ADEA are examined

according to the burden-shifting analysis established in McDonnell Douglas Corp. v. Green,

411 U.S.  792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).   Roge v. NYP Holdings, Inc., 257

F.3d 164, 168 (2d Cir. 2001) (ADEA);  Clark v. New York State Elec. & Gas Corp., 67

F.Supp.2d 63, 78 (N.D.N.Y. 1999) (ADA).   Under McDonnell Douglas, a plaintiff has the

initial burden to establish a *prima facie* case of discrimination.   Weinstock v. Columbia

Univ., 224 F.3d 33, 42 (2d Cir. 2000).

If the plaintiff succeeds, the burden shifts to the employer to offer a legitimate,

nondiscriminatory reason for its action.   Weinstock, 224 F.3d at 42 (citing Texas Dep't of

Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

If the defendant makes this showing, "the presumption of discrimination arising with the

establishment of the *prima facie* case drops from the picture."   Id. (citing St. Mary's Honor

Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1994)).

Once the employer has articulated a neutral reason, the plaintiff must present

evidence that would permit a rational factfinder to infer that the employer's action was more likely than not based on intentional discrimination.  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (citations omitted).   However, "it is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."  Weinstock, 224 F.3d at 42 (quoting Hicks, 509 U.S. at 519, 113 S.Ct. 2742).

### 2.    Plaintiff's ADA Claim

#### (a)    *Prima Facie* Case

To make out a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must show: (1) she suffers from a disability within the meaning of the ADA; (2) her employer is subject to the ADA; (3) she could perform the essential functions of her job without reasonable accommodation; and (4) she was fired because of her disability.  See Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2nd Cir. 1998).

Quest argues Plaintiff is unable to establish the first and fourth elements of her *prima facie* case.  (Def.'s Memo., p. 5.)

#### (1)    There is sufficient evidence for a reasonable jury to conclude that Quest regarded Plaintiff as disabled

The ADA prohibits discrimination against "a qualified individual with a disability" in regard to terms, conditions and privileges of employment.  42 U.S.C. § 12112(a).  A "disability" is defined as "(1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

Plaintiff argues that she was regarded by her employer as having an impairment, thus she was disabled under the ADA.  (Pl.'s Memo., p. 11.)

An employee may be regarded as disabled under the statute if: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities."  Sutton v. United Air Lines, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).  In this case, Plaintiff alleges that Quest mistakenly believed her cancer and/or treatment substantially limited her in the major life activity of working.

"Where, as here, the major life activity in which a plaintiff alleges she was perceived to be substantially limited is working, the plaintiff must show that the employer perceived that she was 'precluded from more than one type of job, a specialized job, or a particular job of choice.'"  Primmer v. CBS Studios, Inc., 667 F.Supp.2d 248, 258 (S.D.N.Y. 2009) (quoting Sutton, 527 U.S. at 491, 119 S.Ct. 2139).  In other words, Plaintiff must do more than establish Quest believed she suffered an impairment that prevented her from working in the job she previously held; she must show that Quest believed she was prevented from working a broad class of jobs.

It is undisputed that Stutzman was aware of Plaintiff's cancer.  Plaintiff alleges Stutzman treated her differently when she returned from her medical leave, making twenty or more comments to her in regards to her chemotherapy treatment making her slow and forgetful, and suggesting she should stay home and rest and/or take pain medication. (Pl.'s Memo., p. 11.)  Taken in the light most favorable to Plaintiff, these statements indicate that Stutzman may have formed a belief that Plaintiff would be unable to perform as she had previously done because of her cancer treatment.  See DeNardi v. DRA Imaging, P.C., 605 F.Supp.2d 550, 555-56 (S.D.N.Y. 2009) (finding evidence of a

10

significant change in the way defendants treated plaintiff after cancer treatment was sufficient for reasonable jury to find defendants believed plaintiff was disabled under the ADA).  In addition, the comments Stutzman made about Plaintiff needing to rest and/or take time off, indicated she believed Plaintiff could not handle any position at Quest, not just her specific job at the time.

Quest argues that it did not regard her as substantially limited with respect to working or any other major life activity.  (Def.'s Memo., p. 10.)  In fact, Plaintiff testified that when she asked to work with someone else, as the rest of the phlebotomists did, Stutzman replied that she worked fast enough and could do it herself.  (Tr. 115:21-116:2.)

Looking at the evidence as a whole, the Court finds Plaintiff presented sufficient evidence for a reasonable factfinder to conclude that Quest regarded her as substantially limited in the major life activity of working.  Plaintiff has satisfied the first element of her *prima facie* case.

Quest further argues that Stutzman was not consulted on and did not participate in Plaintiff's termination; therefore, her knowledge of Plaintiff's condition had no bearing on the decision to terminate.  (Def.'s Memo., p. 9.)  Plaintiff argues that there is a question of fact as to whether Stutzman participated in the decision to terminate her.  (Pl.'s Memo., p. 11.)

In her affidavit to the NYSDHR, dated September 10, 2004, Stutzman avers that Plaintiff was terminated by "Cheri Schumacher and I."  (Stutzman Aff. ¶ 14.)  Then, in her testimony before the NYSDHR on July 12, 2007, Stutzman contradictorily states that she was not consulted on the decision to terminate."  (Tr. 248:3.)

Thus, there is a question of fact as to what extent, if any, Stutzman's perception of

11

Plaintiff's disability influenced the decision to terminate.

**(2)      Plaintiff raised an inference of discriminatory intent**

To satisfy her burden on the fourth prong of her *prima facie* case, Plaintiff must now show she was terminated under circumstances giving rise to an inference of discriminatory intent.  Quest discusses this element under the "Pretext" section of its argument, as does Plaintiff.

Assuming Plaintiff could support a prima facie case on the discrimination claim, Quest has offered a legitimate, non-discriminatory reason for terminating her.  Given the minimal burden at this stage, this Court finds it most expeditious to assume the existence of a *prima facie* case and move to the next stage of the analysis.  See Besht v. Gen. Motors, 327 F.Supp.2d 208, 212-13 (W.D.N.Y. 2004) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1938) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.")); Wado v. Xerox Corp., 991 F.Supp. 174, 187 (W.D.N.Y. 1998).

**(b)      Legitimate, Non-Discriminatory Reason**

Quest states Plaintiff was terminated for admittedly removing PHI from the workplace in violation of its policies concerning the use, disclosure, and maintenance of PHI and other confidential information.  (Def.'s Memo., p. 11.)  Plaintiff argues she did not violate Quest's policy because there was no written policy precluding phlebotomists from removing PHI prior to May 5, 2004.  (Pl.'s Memo., p. 12.)

Quest's policy regarding PHI states:

12

"Quest Diagnostics and its employees must obtain, maintain, use and disclose patient protected health information (PHI) in a manner that protects patient privacy and complies with all state and federal laws."

(Def.'s Ex. P.)

To this end, employees are instructed to "[n]ever remove confidential information from Company premises without management approval." (Pl.'s Ex. Q.) The company policy clearly states that violating the provisions will result in corrective action, including possible discharge. (Id.)

After it was reported that Plaintiff was removing PHI to her car, Quest hired O'Donnell to conduct an investigation. (Def.'s Ex. W.) O'Donnell interviewed Plaintiff, who admitted to making copies of patient sign-in sheets and requisition logs and working on them in her car. (Id.) As a result of the investigation, Quest terminated Plaintiff. (Stauffer Aff. ¶ 23.)

"Discharging an employee for violating company policy constitutes a legitimate nondiscriminatory reason for terminating employment." Welland v. Citigroup, Inc., No. 00 Civ. 738, 2003 WL 22973574 at *6 (S.D.N.Y. December 17, 2003); see Swanston v. Pataki, No. 97 Civ. 9406, 2001 WL 406187 at * 4 (S.D.N.Y. Apr. 20, 2001) (finding that as long as the company puts forth a reasonable reading of the policy as the basis for termination, that "will serve to meet [d]efendants' burden of proffering a legitimate non-discriminatory reason.").

Because Plaintiff admitted to O'Donnell that she removed PHI from the workplace, it was reasonable for Quest to believe she violated its policy. Thus, Quest has articulated a neutral reason for terminating Plaintiff.

### (c)     Pretext

Because Quest has offered a non-discriminatory reason for Plaintiff's discharge, the presumption of discrimination drops out of the picture. <u>Hicks</u>, 509 U.S. at 502, 113 S.Ct. 2742. Plaintiff must now present evidence that Quest's reason is a pretext for intentional discrimination, and that it is more likely than not that her alleged disability was the real reason for discharge.

Plaintiff argues that Quest's proffered legitimate reason is false because she did not violate the policy. (Pl.'s Memo., p. 12.) Further, that her termination was pretextual because: (1) younger, non-disabled co-workers engaged in the same conduct and were not terminated; (2) there is a dispute as to whether Stutzman, who made comments about her condition, was involved in the termination decision; (3) she complained about her supervisor's discrimination to Quest management; (4) O'Donnell inquired about her disability during his investigation; and (5) the decisionmakers were aware of her disability. (Id., pp. 13-14.)

Plaintiff argues she did not violate Quest's policy because she did not remove PHI after the May 5, 2004 broadcast message. (Id., p. 12.) And, when she did remove PHI she operated pursuant to Quest's policies. For instance, Quest's policy states:

> "When working off site, take extra steps to ensure the PHI you are working with is kept confidential and secure, such as... working in a private area in your home or in an office..."

(Pl.'s Ex. 9.) Plaintiff testified that she always protected PHI when removing it from the PSC by putting it in an inner office envelope and covering it with other documents while working in the car. (Tr. 132:8-15.)

14

Plaintiff also argues that prior to May 5, she had permission from management. Plaintiff testified before the NYSDHR that Stutzman gave her permission to remove PHI to complete her work, telling her, "I don't care where you get it done.  Do it in your car, do it at home.  Just do it."  (Tr. 127:11-17.)  However, Stutzman denies giving permission to Plaintiff to finish work by removing PHI to her car.  She testified that work was to be done during work time in the office.  (Tr. 2418-9.)

Moreover, Plaintiff contends that she and Ziegler, the two oldest and disabled phlebotomists, were the only ones terminated for removing PHI even though other similarly situated co-workers were not terminated for same.  Specifically, Plaintiff names Maurita Potoczak, Barbara Bauer, Judith Mangle, and Mary Jo Becker as co-workers who testified they removed PHI to a public break room or their home to complete certain work.  (Pl.'s Memo., pp. 3-4.)  Plaintiff argues that not only was Stutzman aware of this, but she also gave them permission to do so and authorized payment for the time they spent doing the extra work.  (Id., p. 4.)

Quest argues the workers Plaintiff attempts to compare herself to were not similarly situated in all material respects, and even if they were, Quest was unaware that other employees were removing PHI from the PSC.  (Def.'s Reply, p. 3; Def.'s Memo., p. 22.) Quest first argues that Bauer and Mangle worked as mobile "floater" phlebotomists, meaning it was their job to travel to different PSC's.  (Def.'s Reply, p. 3.)  As such, they were required to carry PHI with them to the work sites.  (Id.)  Plaintiff was assigned to one PSC and there was no legitimate business need for her to remove PHI.  (Id.)  Second, Potozcak and Mangle testified they stopped removing PHI after a supervisor told them to, whereas Plaintiff continued to remove PHI after being counseled.  (Id.)  Lastly, Quest

15

argues that even if Plaintiff could show she was similarly situated to these employees, the fact that Plaintiff was replaced by a female with multiple sclerosis negates any inference that she was terminated because of her disability.  (Id., p. 4.)

The Court finds Plaintiff has put forth sufficient evidence for a reasonable factfinder to determine that she was treated more harshly than similarly situated co-workers who also removed PHI from the PSC.  Quest's argument that Potoczak and Mangle stopped removing PHI once they were told not to is unavailing, as there is no evidence Plaintiff continued to remove PHI after being told on May 5 that it was against policy.  Floating phlebotomists aside, there is sufficient evidence that Potoczak and Becker were sufficiently situated to Plaintiff and were not terminated for removing PHI.  (Tr. 78:13-18; 286:19-287:3.)

In addition, the Court finds there are questions of fact as to whether Quest management was aware that other phlebotomists were also removing PHI from the PSC. For instance, Mangle testified that "[n]umerous people were told to take [PHI] home at the end of our shift" to complete their tallies.  (Tr. 77:20-78:10.)  She continued on to say that "[a] lot of us took them home. I know I took them home frequently.  I know Mary Jo Becker." (Tr. 78:16-18.)  Furthermore, Mangle testified that they were told to write down the time they spent doing tallies or counts outside the office and submit it at the end of the week to Stutzman. (Tr. 79:11-18.)  Taken in a light most favorable to Plaintiff, if removing PHI were so prevalent, it is reasonable to believe that management was at least aware of this, if not approved it.

Next, Plaintiff argues that there is at least a question of fact as to whether Stutzman made hostile comments regarding Plaintiff's cancer, and whether she was involved in the

termination decision.  Quest denies that Stutzman treated Plaintiff more critically after she returned from her leave of absence, and even if she made remarks about her condition, she did not participate in the decision to terminate.  (Def.'s Memo., p. 13.)

As discussed above, the Court finds there is a question of fact as to Stutzman's involvement in the decision.  The Court also finds that Stutzman's alleged comments, if true, were not "stray" remarks that are inconsequential to Plaintiff's discrimination claim. Rather, the comments, which directly related to her cancer treatment, evince a discriminatory state of mind and are probative of a discriminatory pretext.  See Tomassi v. Insignia Fin. Group Inc., 478 F.3d 111, 115 (2nd Cir. 2007) (Finding that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.").

Furthermore, Plaintiff argues that the fact that O'Donnell asked co-workers about her disability during his investigation is evidence of pretext.  Ziegler testified that O'Donnell specifically asked her about Plaintiff's illness, what treatment was given, and whether she was able to do her job.  (Pl.'s Ex. 3, Ziegler Stmt; Pl's Ex. 5, Ziegler Aff; Tr. 288:2-6.)  In fact, the content of O'Donnell's report read, "Ziegler advised Shandrew has been on medical leave from May to November 2003 for colon cancer."  (Def.'s Ex. W.)

Plaintiff also argues that the decisionmakers were aware of her disability.  Quest contends that none of the decisionmakers had knowledge of Plaintiff's cancer at the time of the termination decision.  (Def.'s Memo., p. 8.)

The Court notes that although Stauffer testified he did not read O'Donnell's report prior to terminating Plaintiff, he did consult with management, including Schumacher and

17

Hunt.  (Tr. 58:15-18; 59:14-19; 70:13-18.)  And, there is at least a question of fact as to whether they were aware of Plaintiff's cancer.  For instance, Schumacher testified that she was aware Plaintiff went on disability leave because of cancer.  (Tr. 255:12014.)  And, Hunt testified that she coordinated O'Donnell's investigation and read his report, which included comments about Plaintiff's cancer.  (Tr. 354:14-18; 358:15-16.)  Thus, even if Stauffer was unaware of Plaintiff's cancer at the time of termination, it is reasonable to find that management he consulted with did know of her cancer and were in support of termination at least in part because of it.

Moreover, Plaintiff states that her letter to Quest management is probative of discriminatory pretext.  However, the letter to Kehoe does not mention discrimination or her disability.  Rather, it talks about how Stutzman reprimanded her in a belittling and degrading way for making a critical patient error and calls her daily to tell her what she was doing wrong, how the phlebotomists could not take breaks and lunches at the same time, and how Maurita Potoczak took a paper that belonged to Plaintiff out of an inter office envelope.  (Def.'s Ex. T.)  Plaintiff also states she was afraid Stutzman would terminate her "because Maurita wants to run 1150 Youngs."  (Id.)  The Court does not find this letter to show any evidence of pretext because it does not allege that she was treated poorly because of her disability.

Nevertheless, Plaintiff has put forth sufficient evidence such that a rational factfinder could conclude that Quest's proffered legitimate reason for Plaintiff's termination is pretextual, and Plaintiff's alleged disability was the real reason for discharge.

18

**3.      Plaintiff's ADEA Claim**

To establish a *prima facie* case of discriminatory discharge under the ADEA, a plaintiff must show that: (1) she was within the protected age group; (2) she was qualified for the position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination.  Woroski v. Nashua Corp., 31 F.3d 105, 108 (2nd Cir. 1994).

Quest argues Plaintiff is unable to satisfy the fourth element of her *prima facie* case. (Def.'s Memo., p. 5.)  In an attempt to show that Quest's proffered legitimate business decision is pretext and age was the real reason, Plaintiff uses the same arguments as discussed above in the pretext section of her disability argument.

Looking at the record as a whole, there is not sufficient evidence for a reasonable factfinder to conclude that age was a motivating factor in Plaintiff's termination.  First, Plaintiff does not contend her age was discussed by the decisionmakers, or during O'Donnell's investigation.  Second, Plaintiff fails to offer any evidence she was subjected to any age-related comments or criticisms on the job.  Third, Plaintiff was hired when she was 44 years old, suggesting age was not a factor in her hiring or termination.  Lastly, the fact that Quest hired a 49 year old to fill Plaintiff's position weights against the inference that Plaintiff was terminated because of her age.

The Supreme Court held that a plaintiff asserting an age discrimination claim under the ADEA "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

Plaintiff has offered no evidence beyond her conclusory allegations that she was terminated because of her age, which is insufficient to withstand summary judgment. <u>See</u> <u>Davis v. New York</u>, 316 F.3d 100, 100 (2nd Cir. 2002).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted as to Plaintiff's age discrimination claim and denied as to Plaintiff's disability discrimination claim.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED in part and DENIED in part.


SO ORDERED.


Dated:  May 3, 2011
          Buffalo, New York

<u>/s/ William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court
